MICHAEL K. JEANES
Clerk of the Superior Court
By Nancy Cardenas, Deputy
Date 11/04/2016 Time 14:58:35
Description                    Amount
--------- CASE# CV2016-016709 ---------
CIVIL NEW COMPLAINT          319.00 W
------------------------------------------
TOTAL AMOUNT                   0.00
        Receipt# 25565575

James D. Lee, Bar No. 011586
Senior Bar Counsel/Unauthorized Practice of Law Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone: (602) 340-7272
Email: LRO@staff.azbar.org

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

CV 2016-016709

**THE STATE BAR OF ARIZONA,**

    Plaintiff,

    vs.

**GRANT H. GOODMAN,**

    Respondent.

CASE NO. _____

**COMPLAINT**

(Unauthorized Practice of Law; Rules 75-80, Ariz. R. Sup. Ct.)

[State Bar Nos. 15-2067 & 16-0353]

Complaint is made against Respondent as follows:

### JURISDICTION AND STANDING

1.    Plaintiff, the State Bar of Arizona ("State Bar"), is an Arizona non-profit corporation under Title 10, Chapters 24 through 40 (formerly Title 10, Chapter 5) of the Arizona Revised Statutes. The State Bar's creation and continuing operation is authorized by Rule 32(a)(1), Ariz. R. Sup. Ct., and operates under the direction and control of the Supreme Court of Arizona.

2.    The State Bar has standing to bring this proceeding for the unauthorized practice of law pursuant to Rules 77(b)(1) and (5), Ariz. R. Sup. Ct.[1]

---

[1] "Acting under the authority of the board [of governors of the State Bar of Arizona], and under the direction and by appointment of the executive director [of the State Bar of Arizona], unauthorized practice of law counsel shall have the following powers and duties: 1. investigate all information coming to the attention of the state bar which, if true, would be grounds for sanctions for engaging in unauthorized practice of law; . . . 5. represent the state bar in and prosecute unauthorized practice of

1

3.    Respondent Grant H. Goodman (hereinafter referred to as "Respondent") is a resident of Maricopa County, Arizona.

4.    At all times relevant hereto, Respondent was not authorized to engage in the practice of law in the State of Arizona, having initially been suspended from the practice of law on an interim basis on July 21, 2011, and disbarred by a hearing panel and the Supreme Court of Arizona on January 13, 2014, and February 24, 2014, respectively.[2] Following entry of the orders of disbarment, Respondent was no longer a member of the State Bar of Arizona and, as such, was prohibited from engaging in the practice of law in Arizona. Rules 31(b),[3] 31(c),[4] 32(c)(1),[5] and 33(c),[6] Ariz. R. Sup. Ct.

---

law proceedings before the superior court, the court of appeals, and [the supreme] court, and prosecute contempt proceedings in the appropriate forum; . . .."

[2] On July 21, 2011, the Presiding Disciplinary Judge entered an order temporarily suspending Respondent and recommended that the Supreme Court of Arizona issue an order of interim suspension. On August 25, 2011, the Supreme Court entered an *Order of Interim Suspension*. That order was still in effect on January 13, 2014, when a hearing panel issued its *Report and Order Imposing Sanctions*, which included an order disbarring Respondent. Respondent did not appeal the hearing panel's *Report and Order Imposing Sanctions*. Therefore, on February 24, 2014, the Supreme Court of Arizona entered a judgment disbarring Respondent as of January 13, 2014.

[3] Except for the exceptions set forth in Rule 31(d), Ariz. R. Sup. Ct., "no person shall practice law in this state or represent in any way that he or she may practice law in this state unless the person is an active member of the state bar." Respondent did not qualify for any of the exceptions set forth in Rule 31(d).

[4] "No member who is currently suspended or on disability inactive status and no former member who has been disbarred shall practice law in this state or represent in any way that he or she may practice law in this state."

[5] "Disbarred or resigned persons are not members of the bar."

[6] With certain exceptions, "[n]o person shall practice law in the State of Arizona without being admitted to the bar by compliance with the [Arizona Supreme Court] rules."

5.    Respondent, as a non-member of the State Bar of Arizona, is subject to the jurisdiction of the Arizona Supreme Court for any unauthorized practice of law in Arizona. Rules 31(a)(1)[7] and 75(a),[8] Ariz. R. Sup. Ct.

6.    Upon information and belief, all of the acts and conduct alleged herein, including the unauthorized practice of law, occurred in Maricopa County, Arizona.

7.    Superior courts in Arizona have jurisdiction over unauthorized practice of law proceedings[9] that are initiated pursuant to Rules 78(a)[10] and 79(a),[11] Ariz. R. Sup. Ct.

8.    Based upon the foregoing, jurisdiction and venue are proper in the Maricopa County Superior Court.

## COUNT ONE
### (Unauthorized Practice of Law)

#### General Allegations

9.    All factual assertions set forth above in the "Jurisdiction and Standing" section of this complaint are incorporated herein, as if set forth in full.

10.   On January 13, 2014, a hearing panel issued a *Report and Order Imposing Sanctions (Report)* in a disciplinary case against Respondent, which

---

[7] "Any person or entity engaged in the practice of law or unauthorized practice of law in this state, as defined by these rules, is subject to this court's jurisdiction."

[8] "Th[e] [Arizona Supreme] [C]ourt has jurisdiction over any person engaged in the unauthorized practice of law pursuant to Rule 31(a) of these rules."

[9] "'Unauthorized practice of law proceeding' means any action involving a respondent pursuant to the rules related to the unauthorized practice of law." Rule 75(b)(16), Ariz. R. Sup. Ct.

[10] "An unauthorized practice of law proceeding shall be disposed of by dismissal or by the filing of a complaint in the superior court seeking imposition of one or more sanctions as provided in these rules."

[11] "Formal unauthorized practice of law proceedings shall be instituted by unauthorized practice of law counsel filing a consent to cease and desist agreement or a complaint with the clerk of the superior court."

included an order of disbarment that resulted in the Supreme Court's *Judgment of Disbarment*. The *Report* stated in part:

> . . . In both the Summit Builders and Goodman Entities matters, [Respondent] filed pleadings with the state and federal courts asserting that he represented third parties, his professional association and several business entities.
>
> While [Respondent] may have been able to represent his personal interests as a pro per party in a legal matter, as any individual is allowed to do, he could not use an assertion of an assignment of third parties or business entities['] interests as a means to subvert the effect of his suspension from the practice of law. Nor are we persuaded the assignment applied to the case.
>
> [Respondent] violated the court's order by appearing in court on behalf of his wife and his companies after his suspension was effective . . . .

11. At all times relevant hereto, Respondent was aware that he had been disbarred from practicing law in Arizona and was not authorized to provide legal services or engage in the practice of law. Respondent was also aware—or at least on notice—that a hearing panel had found that "he could not use an assertion of an assignment of third parties or business entities['] interests as a means to subvert the effect of his suspension from the practice of law," and that that finding would be equally applicable following his disbarment.

12. At all times relevant hereto, Respondent was aware—or at least on notice—of the Supreme Court's rules and orders regarding the unauthorized practice of law, but nevertheless disregarded them.

13. At all times relevant hereto, Respondent was not a legal document preparer certified by the Supreme Court of Arizona pursuant to § 7-208 of the Arizona Code of Judicial Administration (ACJA).[12]

---

[12] ACJA § 7-208 addresses the administration and certification of legal document preparers.

14. At all times relevant hereto, Respondent did not possess an Arizona collection agency license pursuant to A.R.S. §§ 32-1001 through 32-1057, and, upon information and belief, was not employed by an Arizona collection agency that was licensed pursuant to A.R.S. §§ 32-1001 through 32-1057.

15. On March 11, 2014, Karen Mothershead (hereinafter referred to as "Mothershead") assigned an interest in legal claims or possible causes of action to Respondent. The assignment included the following language:

> Karen Mothershead, you shall be the 'assignors' [sic] of all right, title, and interest in 'claims', as broadly construed, which relate to, or arise out of, or which may relate to or which may arise out of, non-probate-Probate Exception causes of action inflicted upon your joint or severable interests, or which may have impaired your marital community interests, in connection with 'probate proceedings' asserted against your deceased husband, Robert Mothershead. Karen, you will also represent yourself pro per, in the event any 'claim[,]' 'right[,]' 'title' or 'interest' is declared by a judge of general jurisdiction to be non-assignable at some point in the future. . . . We agree that a reasonable division of proceeds arising out of this litigation shall be apportioned, after payment of all expenses and costs of suit, thirty percent (30%) to [Respondent], with seventy percent (70%) to Karen Mothershead, whether such proceeds are by virtue of a settlement, judgment, collection efforts, arbitration, mediation, trial, appeal, or at any time after filing of the suit or contesting issues in the pending federal litigation (the 'interpleader action'). The intent of the parties to this agreement is to file suit in Arizona Federal District Court. The parties agree that all expenses of suit, including pre-filing travel expense[s] for [Respondent's] due-diligence purposes, costs of collection, all federal court filing fees, expense[s] associated with service of process, post-filing travel expense[s] for [Respondent], all expert retention fees, all video and associated deposition expense[s], expert deposition fees, copy fees, electronic arts fees, transcript fees, and appellate filing fees as necessary, shall be borne by Karen Mothershead upon presentation.

That assignment did not include a term precluding Mothershead from revoking it.

16. On June 17, 2015, Mothershead and Respondent both signed an *Assignment Addendum of June 17th, 2015*. That *Assignment Addendum* stated in part:

On March 11, 2014, Karen Mothershead ('Assignor') assigned to [Respondent] ('Assignee') all right, title, and interest in any and all causes of action and claims (as broadly construed), which relate to, or arise out of, or which may relate to non-probate (Insurance, e.g.) and Probate Exception (RICO/Civil Rights/Tortious Interference with Expectancy/Bad Faith/Contract/Fraud, etc.) claims and actions.

. . . .

The causes of action and claims [addressed in the March 11, 2014, assignment] included, but were not limited to, breach of legal and fiduciary duties, which could implicate Civil RICO and all other counts as well. The claims and actions include both State and Federal forums, i.e., Bankruptcy Court, while contemplating debt recovery of all, or substantially all forms of damage and injunctive relief '. . . construed as broadly as possible.'

This assignment relates back and is applicable to conduct, claims, defenses, damage, and proceedings, federal or state, pending or to be initiated, for all causes of action, damage, and claims, as broadly construed.

After payment of all expenses and cost[s] of suit, expert fees, consulting fees, research and investigation costs, and additional expense[s] and cost[s] as defined in the March 11, 2014[,] Assignment Agreement, the Assignor shall receive 70% of the recovery (minus the above), with the Assignee receiving 30% (with payment or deductions for all costs and expense[s])—whether by settlement, judgment, collection efforts, arbitration, mediation, trial, appeal, or at any time thereafter.

The March 11, 2014[,] Assignment is incorporated herein.

The Assignments, then and now, convey all right, title and interest in all State and Federal proceedings, causes of action and claims or defenses under the terms and conditions specified above.

That *Assignment Addendum* did not include a term precluding Mothershead from revoking it.

17. Mothershead's assignments to Respondent were invalid because (a) there was a lack of legal and valuable consideration by Respondent; (b) the assignments failed to include a description that was sufficient to readily identify the subject matter of the assignments; and (c) the matters that Respondent pursued

against the Dulara defendants were not within the subject matter of either assignment from Mothershead. Furthermore, the assignments were void as against public policy because they were the equivalent of a contingency fee agreement that allowed Respondent, a non-lawyer assignee, to engage in the unauthorized practice of law under the guise of being a pro per litigant. Even if the assignments were initially valid, they became invalid when Mothershead revoked them on or about July 26, 2015.

18. Other than the two assignments, Respondent did not have any relationship with any potential accused, obligor, debtor, defendant or potentially liable party that would have allowed him to assert a claim, right, title or interest against them in his own name.

<u>Bankruptcy Court Proceeding</u>

19. On May 20, 2014, Dulara Automotive Group, LLC, filed for Chapter 11 bankruptcy relief (*In re Dulara Automotive Group, LLC*, No. 2:14-bk-07683-MCW).

20. On November 5, 2014, Karen Mothershead and Dulara Automotive Group, LLC, entered into a partnership agreement. Mothershead agreed to invest $200,000.00 in Dulara Automotive Group, which was to be used to purchase vehicles for sale, and Dulara Automotive Group agreed to make certain monthly payments to Mothershead. At some point in time, Dulara Automotive Group failed to make one or more payments to Mothershead.

21. On December 12, 2014, U.S. Bankruptcy Judge Madeleine Wanslee entered an order approving Dulara Automotive Group's financing and partnership agreement with Mothershead (Docket at 95).

22. On June 18, 2015, a day after Respondent and Mothershead signed the *Assignment Addendum*, Respondent and Mothershead filed a *Motion to Vacate and Void (ab initio) 'DIP' Order and to Return the Parties to the Status Quo Ante as: (1) A Fraud on the Court Fed.R.Bankr.P. 9024 (Fed.R.Civ.P. 60(b)(4)/60(d)(1)(2)(3)) and (2) Bankruptcy Fraud 18 U.S.C. § 152(1)(2)(3)(4)(5)(6)(8)* (Docket at 156; footnote in caption omitted). Respondent drafted that motion, which both Respondent and Mothershead signed. Mothershead's name, address and telephone number were not included at the top of the first page of the motion, nor were her address and telephone number included in the signature block of the motion. In that motion, Respondent and Mothershead argued that neither had been informed about Dulara Automotive Group's bankruptcy, and that Dulara Automotive Group engaged in conduct that rendered its debt to Mothershead non-dischargeable. Also on June 18, 2015, Respondent informed Judge Wanslee that Mothershead had assigned insurance proceeds to him, which he claimed were at issue. Judge Wanslee's minute entry order regarding the hearing on June 18, 2015, stated in part, "THE COURT FURTHER NOTES [RESPONDENT] MAY NEED TO ADDRESS HIS STANDING TO PROSECUTE HIS MOTION AT THE TRIAL" (Docket at 158; capitalization in original).

23. On July 13, 2015, Respondent, Mothershead and, ostensibly, counsel for Dulara Automotive Group, filed a *Joint Pretrial Statement* in Bankruptcy Court that identified Respondent as a *pro se* creditor assignee (Docket at 164). Upon information and belief, Respondent drafted the *Joint Pretrial Statement*, which both Respondent and Mothershead "signed" electronically. Mothershead's name, address and telephone number were included at the top of the first page of the *Joint Pretrial*

*Statement.* In the *Joint Pretrial Statement*, Respondent took legal positions that supported Mothershead's interest in the Dulara Automotive Group matter (e.g., that Dulara Automotive Group's bankruptcy was concealed from Mothershead when she entered into the partnership agreement with the company). Respondent and Mothershead combined their positions in most sections of the *Joint Pretrial Statement*.

24. During a hearing on July 20, 2015, Judge Wanslee expressed her concerns about Respondent's role in the matter and the parties' unilateral pretrial statements. Respondent provided Judge Wanslee with copies of the assignment documents, after which she inquired into Respondent's standing in the Bankruptcy Court proceeding. She asked why the assignments were not an "end run around the prohibition we have in this state against individuals being represented by other people who are not attorneys." Judge Wanslee concluded that the assignments were insufficient to allow Respondent to speak for (i.e., represent) Mothershead in Bankruptcy Court. Following a brief recess, Respondent, Mothershead and Dulara Automotive Group, through its attorney, placed the terms of a settlement agreement on the record. The terms included periodic payments by Dulara Automotive Group totaling $172,000.00, the payee of which was to be determined by the parties while drafting a written settlement agreement, and Mothershead's return of a vehicle to Dulara Automotive Group.

25. On or about July 26, 2015, Mothershead revoked the assignment dated March 11, 2014, and the *Assignment Addendum of June 17th, 2015.*

26. On July 30, 2015, Respondent filed a *Motion to Confirm Settlement Agreement Pursuant to Fed.R.Bankr.P. 9019* (Docket at 170). That motion stated in part:

> 4. As of July 20, 2015, [Dulara Automotive Group] is indebted to [Respondent] under the settlement in an amount of $172,000.00."
>
> . . . .
>
> 6. At bottom, Ms. Mothershead has no position in this litigation *vis-à-vis* the Assignments—as a creditor—as a party-in-interest—or as an administrative priority claimant. Ms. Mothershead has, and had, assigned all interests to [Respondent].

Respondent asserted in that motion that he was "not acting as a representative on Mothershead's behalf." (Footnote omitted). He stated in footnote 1, "Even were [Respondent] still licensed [to practice law], the Assignments were made individually to [Respondent] from individual Mothershead, and not in a representative capacity—there is practically, and ethically, no 'attorney-client' privilege accorded the assignments." The proposed written settlement agreement that Respondent submitted with his *Motion to Confirm Settlement Agreement* included, among other things, the following terms: (a) a default would "trigger all collection and damage remedies in both State and Federal forums"; and (b) any obstruction of the agreement by Mothershead would form the basis of a claim against Mothershead "in protection of the property interests accorded the Assignee [i.e., Respondent]."

27. Also on July 30, 2015, Mothershead filed a *Revocation of Assignment* with the Bankruptcy Court, which stated that she had revoked the assignment dated March 11, 2014, and the *Assignment Addendum* dated June 17, 2015 (Docket at 171).

28. On August 5, 2015, Respondent filed a *Motion to Strike Assignor's Absolute Assignment 'Revocation' Fed.R.Bankr.P. 7012(b)/Fed.R.Civ.P. 12(f)(1)(2)* (Docket at 173). Respondent essentially argued in that motion that Mothershead did not have legal grounds to revoke the assignments she had granted to him, in part because the assignments did not include a provision that granted Mothershead a right to revoke the assignments.

29. On August 17, 2015, Respondent filed a *Motion to Dismiss 'DAG' Bankruptcy and Order with Notice* (Docket 178). Respondent argued in that motion that the Dulara Automotive Group bankruptcy case should be dismissed because Dulara Automotive Group had intentionally breached the July 20, 2015, settlement agreement by failing to make a payment required by the agreement. Respondent also asserted that a Chapter 11 plan would not be confirmed because Dulara Automotive Group "exist[ed] only by virtue of its crime-based money laundering activities[,] which are federal crimes."

30. On August 23, 2015, Respondent filed a *Certified Service/Notice re: Response/Injunction and Motion to Strike Assignor's 'Objection' to Expedited Settlement 9019 Hearing* (Docket at 183). In that filing, Respondent asserted that Mothershead had assigned all of her rights and interest to him regarding the Dulara Automotive Group matter and that she had no standing to file pleadings or submit arguments to the Bankruptcy Court.

31. On August 26, 2015, Judge Wanslee concluded that the Bankruptcy Court did not have jurisdiction to resolve the assignment issue, which was necessary to determine to whom Dulara Automotive Group should distribute funds pursuant to the July 20, 2015, settlement agreement. She suggested that the

parties resolve that issue in another forum. The minute entry order for the August 26, 2015, hearing stated that the parties needed to resolve the assignment issue and provide the court with an order that Judge Wanslee could approve or provide an order from another court indicating how the funds were to be disbursed (Docket at 188).

32. On September 2, 2015, counsel for Dulara Automotive Group filed a proposed order confirming the settlement agreement reached by Mothershead, Respondent and Dulara Automotive Group (Docket at 195).

33. On September 11, 2015, Judge Wanslee entered an order approving the written settlement agreement, which incorporated the in-court settlement agreement stated on the record on July 20, 2015 (Docket at 198). The *Order Confirming Settlement Agreement* ordered Dulara Automotive Group to make periodic payments totaling $172,000.00 and ordered Mothershead to deliver a vehicle to Dulara Automotive Group within three days. Payments were ordered to be made to the Bankruptcy Court pending resolution of the assignment issue between Mothershead and Respondent.

34. On September 23, 2015, Judge Wanslee entered an order dismissing Dulara Automotive Group's bankruptcy with prejudice. That order included a 180-day bar from re-filing (Docket at 200).

<u>Count One Violation</u>

35. By engaging in the conduct set forth in Count One, Respondent violated the Supreme Court's rules and order of disbarment by engaging in the unauthorized practice of law in Arizona.

12

**COUNT TWO**
**(Failure to Respond to**
**Unauthorized Practice of Law Counsel)**

36. On April 22, 2016, unauthorized practice of law counsel sent an initial screening letter regarding State Bar File No. 16-0353 to Respondent at his address of record with the State Bar of Arizona. That letter directed Respondent to submit a written response to the unauthorized practice of law charge by May 11, 2016. That letter noted that Respondent had a duty to cooperate with the State Bar's investigation pursuant to rule 78(b)(3), Ariz. R. Sup. Ct., and that a failure to fully and honestly respond to, or cooperate with, the investigation would be grounds for discipline. Respondent failed to submit a written response, as directed by unauthorized practice of law counsel.

37. On May 27, 2016, unauthorized practice of law counsel sent a letter regarding State Bar File No. 15-2067 to Respondent at his address of record with the State Bar of Arizona. That letter directed Respondent to submit a written response to the unauthorized practice of law charge by June 16, 2016. That letter noted that Respondent had a duty to cooperate with the State Bar's investigation pursuant to rule 78(b)(3), Ariz. R. Sup. Ct., and that a failure to fully and honestly respond to, or cooperate with, the investigation would be grounds for discipline. Respondent failed to submit a written response, as directed by unauthorized practice of law counsel.

38. On June 14, 2016, unauthorized practice of law counsel sent a letter regarding State Bar File No. 16-0353 to Respondent at his address of record with the State Bar of Arizona. That letter directed Respondent to submit a written response to the unauthorized practice of law charge within 10 days of the date of

that letter. Respondent failed to submit a written response, as directed by unauthorized practice of law counsel.

### Count Two Violation

39.  By engaging in the conduct set forth in Count Two, Respondent violated the duties imposed upon him by Rule 78(b)(2), Ariz. R. Sup. Ct., by failing to (a) respond within 20 days to unauthorized practice of law counsel's inquiry into concerns that he had engaged in the unauthorized practice of law; or (b) provide unauthorized practice of law counsel with grounds for refusing to do so.

### CONCLUSION

Respondent engaged in the unauthorized practice of law in Arizona following his placement on interim suspension on July 21, 2011, and disbarment on January 13, 2014.

The grounds for imposing sanctions against Respondent, as set forth in Rule 76(a), Ariz. R. Sup. Ct., include the following: (a) Respondent engaged in conduct that constituted the unauthorized practice of law pursuant to Rule 31, Ariz. R. Sup. Ct.; (b) Respondent willfully disobeyed or violated a court ruling or order requiring him to do or forbear doing an act connected with the unauthorized practice of law (i.e., he violated the Supreme Court's order of disbarment); (c) Respondent failed to promptly respond to unauthorized practice of law counsel's inquiry or request for information relevant to complaints or matters under investigation concerning his conduct or assert grounds for refusing to do so; and (d) Respondent refused to cooperate with officials and staff of the State Bar acting in the course of their duties.

**WHEREFORE,** based upon the foregoing, the State Bar respectfully moves this Court to make the following findings of fact:

a. At all times relevant, Respondent was a disbarred lawyer who was prohibited from engaging in the practice of law in Arizona.

b. Respondent was aware that he had been suspended and then disbarred. He was also aware of the Supreme Court's rules and orders regarding the unauthorized practice of law, but disregarded them. He was additionally aware that a hearing panel had entered an order disbarring him and that the hearing panel had concluded that "he could not use an assertion of an assignment of third parties or business entities['] interests as a means to subvert the effect of his suspension from the practice of law."

c. Respondent was not a legal document preparer certified by the Supreme Court of Arizona pursuant to ACJA § 7-208.

d. Respondent did not possess an Arizona collection agency license and was not employed by a licensed collection agency.

e. Respondent accepted two assignments from Mothershead.

f. Respondent did not have any relationship with any potential accused, obligor, debtor, defendant or potentially liable party that would have allowed him to assert a claim, right, title or interest against any of the Dulara defendants absent the two assignments.

g. Mothershead's assignments to Respondent included a provision that granted Mothershead a percentage of any recovery that Respondent obtained and a provision regarding the payment of costs associated with

15

pursuing a claim, both of which are consistent with contingency fee agreements regularly utilized by licensed attorneys.

h.   Mothershead's assignments to Respondent were invalid because (i) there was a lack of legal and valuable consideration by Respondent; (ii) the assignments failed to include a description that was sufficient to readily identify the subject matter of the assignments; and (iii) the matters that Respondent pursued against the Dulara defendants were not within the subject matter of either assignment from Mothershead. Furthermore, the assignments were void as against public policy because they were the equivalent of a contingency fee agreement that allowed Respondent, a non-lawyer assignee, to engage in the unauthorized practice of law under the guise of being a pro per litigant.

i.   Respondent sought recovery of the entire amount of the claim against the Dulara defendants rather than his 30% portion of the claim.

j.   Respondent, while pursuing his own interests in the claim against the Dulara defendants, also represented Mothershead's interests in the claim against the Dulara defendants (if the assignments were valid, Respondent represented both his and Mothershead's interests; if the assignments were invalid, as alleged, Respondent represented only Mothershead's interests).

k.   Respondent evaded or circumvented the order disbarring him and engaged in the unauthorized practice of law in Arizona under the pretext of self-representation based upon the two assignments from Mothershead.

16

l.  Respondent engaged in the unauthorized practice of law, as defined by Rule 31, Ariz. R. Sup. Ct., by, among other things, filing documents and motions with the United States Bankruptcy Court for the District of Arizona that asserted Mothershead's interests, as well as his own, against the Dulara defendants, and settling with the Dulara defendants in the bankruptcy court proceeding, which benefited Mothershead as well as himself.

m.  Respondent failed to promptly respond to unauthorized practice of law counsel's inquiries or requests for information concerning his conduct or assert a ground for refusing to do so.

Based upon the foregoing, the State Bar respectfully moves this Court to issue an order pursuant to Rules 76(a) and 76(b)(3)–(6), Ariz. R. Sup. Ct., that includes the following provisions:

a.  Respondent be permanently enjoined from engaging in the unauthorized practice of law in Arizona, as defined by Rule 31, Ariz. R. Sup. Ct., and relevant case law.

b.  Respondent be permanently enjoined, both personally and through counsel, from attempting to enforce by demand letter, litigation or otherwise any legal claim, right, title or interest based upon an assignment or similar contract in which the assignor retains any interest in the legal claim, right, title or interest (e.g., an interest in any recovery, award or judgment).

c.  Respondent be ordered to respond promptly to any inquiry or request from unauthorized practice of law counsel, a superior court or the

Supreme Court of Arizona, made pursuant to Rules 75 through 80, Ariz.
R. Sup. Ct.

d.  Respondent pay costs and expenses to the State Bar of Arizona in the
amount of · no less than Five Hundred Dollars ($500.00) for its
investigation and prosecution of him for engaging in the unauthorized
practice of law and failing to respond to unauthorized practice of law
counsel's inquiries or requests for information.

**DATED** this ___7th___ day of November, 2016.

**STATE BAR OF ARIZONA**

James D. Lee
Senior Bar Counsel/Unauthorized Practice of
Law Counsel

Original filed with the Clerk of
the Superior Court of Maricopa County
this 4th day of November, 2016.

by:_____
    JDL/ts

**In the Superior Court of the State of Arizona**
**In and For the County of** Maricopa

## CV2016-016709

Plaintiff's Attorney  James D. Lee

Attorney Bar Number  011586

| Is Interpreter Needed? ☐ Yes ☒ No | HON. K. JEANES, CLERK |
| If yes, what language: | BY |
| | *N. Cardenas* |
| | N. CARDENAS, FILED |
| | 2016 NOV -4  PM 2: 59 |

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
| State Bar of Arizona | 4201 N. 24th Street, Suite 100 | (602) 340-7272 | jim.lee@staff.azbar.org |
| | Phoenix, AZ 85016 | | |

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)     Grant H. Goodman

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT: ☐ Temporary Restraining Order  ☐ Provisional Remedy  ☐ OSC

☐ Election Challenge   ☐ Employer Sanction   ☐ Other _____
(Specify)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.

(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category.)

☐ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction. However, consumer transactions are not eligible. A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria.** See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case. **In addition, mark the appropriate box below in the "Nature of Action" case category.** The words "commercial court assignment requested" must appear in the caption of the original complaint.

## NATURE OF ACTION

(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.    ☐ 123 Hospital
☐ 122 Physician D.O     ☐ 124 Other

Case No._____

## 130 CONTRACTS:

- ☐ 131 Account (Open or Stated)
- ☐ 132 Promissory Note
- ☐ 133 Foreclosure
- ☐ 138 Buyer-Plaintiff
- ☐ 139 Fraud
- ☐ 134 Other Contract (i.e. Breach of Contract)
- ☐ 135 Excess Proceeds-Sale
- ☐ Construction Defects (Residential/Commercial)
  - ☐ 136 Six to Nineteen Structures
  - ☐ 137 Twenty or More Structures

## 150-199 OTHER CIVIL CASE TYPES:

- ☐ 156 Eminent Domain/Condemnation
- ☐ 151 Eviction Actions (Forcible and Special Detainers)
- ☐ 152 Change of Name
- ☐ 153 Transcript of Judgment
- ☐ 154 Foreign Judgment
- ☐ 158 Quiet Title
- ☐ 160 Forfeiture
- ☐ 175 Election Challenge
- ☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)
- ☐ 180 Injunction against Workplace Harassment
- ☐ 181 Injunction against Harassment
- ☐ 182 Civil Penalty
- ☐ 186 Water Rights (Not General Stream Adjudication)
- ☐ 187 Real Property
- ☐ Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)

- ☐ 194 Immigration Enforcement Challenge
  (§§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

- ☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- ☐ 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- ☐ 155 Declaratory Judgment
- ☐ 157 Habeas Corpus
- ☐ 184 Landlord Tenant Dispute- Other
- ☐ 190 Declaration of Factual Innocence
  (A.R.S. §12-771)
- ☐ 191 Declaration of Factual Improper Party Status
- ☐ 193 Vulnerable Adult (A.R.S. §46-451)
- ☐ 165 Tribal Judgment
- ☐ 167 Structured Settlement (A.R.S. §12-2901)
- ☐ 169 Attorney Conservatorships (State Bar)
- ☒ 170 Unauthorized Practice of Law (State Bar)
- ☐ 171 Out-of-State Deposition for Foreign Jurisdiction
- ☐ 172 Secure Attendance of Prisoner
- ☐ 173 Assurance of Discontinuance
- ☐ 174 In-State Deposition for Foreign Jurisdiction
- ☐ 176 Eminent Domain– Light Rail Only
- ☐ 177 Interpleader– Automobile Only
- ☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ 183 Employment Dispute- Discrimination
- ☐ 185 Employment Dispute-Other
- ☐ 195(a) Amendment of Marriage License
- ☐ 195(b) Amendment of Birth Certificate
- ☐ 163 Other _____
  (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☐ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☐ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(i) ARCP

**Additional Plaintiff(s)**

_____

_____

**Additional Defendant(s)**

_____

_____

©Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CV10f - 010116

James D. Lee, Bar No. 011586
Senior Bar Counsel/Unauthorized Practice of Law Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone: (602) 340-7272
Email: LRO@staff.azbar.org

MICHAEL K. JEANES, CLERK
BY                        DEP
*N. Cardenas*
N. CARDENAS, FILED

**2016 NOV -4  PM 2: 59**

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

CV 2 0 1 6 - 0 1 6 7 0 9

**THE STATE BAR OF ARIZONA,**

    Plaintiff,

    vs.

**GRANT H. GOODMAN,**

    Respondent.

CASE NO. _____

**CERTIFICATE REGARDING
COMPULSORY ARBITRATION**

[State Bar Nos. 15-2067 & 16-0353]

The undersigned certifies that this case is not subject to the Uniform Rules of

Procedure for Arbitration.

**DATED** this _4th_ day of November, 2016.

                        **STATE BAR OF ARIZONA**

                        *James D. Lee*
                        James D. Lee
                        Senior Bar Counsel/Unauthorized Practice of
                        Law Counsel

Original filed with the Clerk of
the Superior Court of Maricopa County
this _4th_ day of November, 2016.

by: _Dalese Stone_
     JDL/ts

1

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
D. Sandoval, Deputy
11/29/2016 2:21:00 PM
Filing ID 7910489

James D. Lee, Bar No. 011586
Senior Bar Counsel
State Bar of Arizona
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6266
Telephone (602) 340-7272
Email: LRO@staff.azbar.org

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND OFR THE COUNTY OF MARICOPA

| | |
|---|---|
| **STATE BAR OF ARIZONA,** | **Case No. CV2016-016709** |
| Plaintiff, | |
| vs. | **NOTICE OF FILING WAIVER OF SERVICE OF SUMMONS** |
| **GRANT H. GOODMAN,** | |
| Respondent. | [State Bar Nos. 15-2067 & 16-0353] |

The State Bar of Arizona, by undersigned bar counsel, hereby gives notice of filing of the Waiver of Service of Summons of Grant H. Goodman which is attached hereto.

**DATED** this 29th day of November, 2016.

**STATE BAR OF ARIZONA**

/s/ James D. Lee
James D. Lee
Senior Bar Counsel

1

Original efiled with the Maricopa
County Superior Court this 29th day
of November, 2016.

Copy of the foregoing emailed/mailed
this 29th day of November, 2016, to:

Grant H. Goodman
3104 E. Camelback Road, #563
Phoenix, Arizona 85016-4595
Email: granthgoodman@msn.com
Respondent

Copy of the foregoing hand-delivered
this 29th day of November, 2016, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, Arizona 85016-6266

by: _/s/ Talese Stone_____
      JDL/ts

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

THE STATE BAR OF ARIZONA,

    Plaintiff,

    vs.

GRANT H. GOODMAN,

    Respondent.

Case No. CV2016-016709

**WAIVER OF SERVICE OF SUMMONS**

(Unauthorized Practice of Law; Rules 75-80, Ariz. R. Sup. Ct.)

[State Bar Nos. 15-2067 & 16-0353]

TO: James D. Lee, State Bar of Arizona

I acknowledge receipt of your request that I waive service of a summons in the action of *State Bar of Arizona v. Grant H. Goodman*, which is case number CV2016-016709 in the Superior Court of the State of Arizona in and for the County of Maricopa. I also have received a copy of the complaint in the action, this instrument (a copy of which I have kept for my records), and a means by which I can return the signed waiver to you without cost to me (email to james.lee@azbar.org).

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I be served with judicial process in the manner provided by the Arizona Rules of Civil Procedure.

I will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me if an answer or motion under Rule 12 is not served upon you within sixty (60) days after November 16, 2016, or within ninety (90) days after that date if the request was sent outside the United States.

Dated this 23ᴿᴰ day of Nov. , 2016.

_____
Grant H. Goodman

15-38102

Original filed with the Maricopa
County Superior Court this 28TH day
of Nov. _____, 2016.

Copy of the foregoing emailed/mailed
this 28TH day of Nov. _____, 2016, to:

Grant H. Goodman
3104 E. Camelback Road, #563
Phoenix, Arizona 85016-4595
Email: granthgoodman@msn.com
Respondent

Copy of the foregoing hand-delivered
this 28th day of Nov. _____, 2016, to:

Lawyer Regulation Records Manager
State Bar of Arizona
4201 North 24th Street, Suite 100
Phoenix, Arizona 85016-6266

by: _Talese Stone_____
    JDL:ts

## DUTY TO AVOID UNNECESSARY COSTS OF SERVICE OF SUMMONS

Rule 4.1 and Rule 4.2 of the Arizona Rules of Civil Procedure require certain parties to cooperate in saving unnecessary costs of service of the summons and a pleading. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

2

15-38102

A defendant who waives service must, within the time specified on the waiver form, serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and also must file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

3

15-38102

1   Grant H Goodman
    3104 E Camelback Road, Suite 563
2   Phoenix, AZ 85016
    Phone (602) 840-2393
3   granthgoodman@msn com

4

5

6

7
                        Ariz.Sup Ct R 123 Records Request
8

9   Attention Custodians of Record for

10  The Administrative Office of the Courts—AOC              )
    Norman J Davis Presiding Judge, (ADMINISTRATIVE         )
11  ORDER NO 2014-029)                                      )
12  Clerk of the Superior Court, Hon Michael K. Jeanes       )
    Clerk of the Court of Appeals, 1CA-CV14-0195,           )
13                                                          )
    Ruth H Willingham                                       )
14  Hon Katherine Cooper, CV2013-015096                     )
15  Raymond L Billotte, Judicial Branch Administrator        )
    Phil Knox, Deputy Court Administrator                   )
16  Hon Randall H Warner, CV2013-015096                     )
17  Peter Kiefer, Civil Court Administrator                  )
                                                            )
18  ────────────────────────────────────────

19

20

21

22

23

24

25  ────────────────────────

26  ────────────────────────

                            - 1 -

*ARIZ SUP CT R* 123 RECORDS REQUEST

This Records Request involves **CV2013-015096, 1CA-CV14-0195, and ADMINISTRATIVE ORDER NO 2014-029 The Arizona Code of Judicial Administration,** detailed below, shall be used as adopted by the Supreme Court of Arizona governing production and disclosure of all file materials, transmissions and transmittals, documents, electronic communications, electronic filings, electronic transmissions, and paper documents requested below, and which are related, or may be related, to the Records Requests from the above cases and Administrative Proceedings

**ARIZONA CODE OF JUDICIAL
ADMINISTRATION
Part 1 Judicial Branch
Administration Chapter 5
Automation
Section 1-503 Electronic Communications**

**A. Definitions** In this section, unless otherwise specified, the following definitions apply

Appointing Authority ' means the judge, clerk of court, administrator, or their designee who is designated to supervise authorized users

Court ' means all Arizona judicial department courts and offices subject to this policy

'Electronic communication ' means, but is not limited to, electronic mail (email), Internet services voice mail, and facsimile messages that are sent or received by judicial officers and employees, and other authorized users, and the network resources over which such communications are transmitted

"Internet" means the global network connecting millions of computers and includes, but is

- 2 -

1    not limited to, access to the World Wide Web

2       Official communication' means a communication pertaining to public business, which must
3    be preserved as a record of official action or policy

4    "Users" means all court officials and employees who have access to the Arizona Judicial
5    Information Network (AJIN) and also any non-court persons who are authorized users

6       The Administrative Office of the Courts (AOC) is responsible for operating and managing
7    AJIN, electronic communications resources and Internet access, and for ensuring that AJIN's
     resources are used to support the business of the local court and the judicial department through
8    implementation of appropriate policies and procedures "   2       Persons Covered  The section
9    applies to all courts using AJIN  Courts not using AJIN for their electronic mail or Internet access
     are required to have substantially similar written electronic communications policies

10
11   3 Authorized Use  Users shall use electronic communications resources and Internet access
     responsibly for purposes relating to the business of the court or enhancing the work environment
12   of the court  as set forth in this section  Those users who bring their own personal computers to
13   work and access the Internet from those computers, as well as those who access email and the
     Internet from remote locations via any dial-up connection through AJIN, are also subject to this
14   section

15   4 Relationship to Other Rules  Use of computers, electronic communications and Internet
16   resources is subject to all other rules governing the judicial department and court personnel,
     including the code of conduct, equal employment opportunity or sexual harassment policies and
17   Rule 123, Rules of the Supreme Court of Arizona, governing public access to court records    d.
18       Official Use  A user may transmit official communications via email as long as they are
     created and preserved in compliance with applicable record retention and destruction schedules.
19   c   Harassment  Users shall not use electronic communication to intimidate or harass others,
     or to interfere with the ability of others to conduct court business    d    Identification  Users
20   shall clearly identify themselves in any electronic communication  and shall not construct an
21   electronic message or communication which appears to be from anyone other than the user

22   e Unauthorized Access  Users shall not capture and ' open" electronic communications
23   addressed to others except as required for authorized staff to diagnose and correct delivery
     problems, and shall not obtain access to the files or communications of others unless doing so
24   serves a legitimate business purpose       ı    Adherence to Security Restrictions on Systems and
25   Data  Users shall not attempt to gain unauthorized access to data, to breach or evade any security
     measures on any electronic communication system, or to intercept any electronic communication
26   transmissions without proper authorization       g    Violations  of  Security  Restrictions  on

Systems and Data  Users shall not attempt to gain unauthorized access to data or to breach or evade any security measures

    b  Use for Court Purposes  The appointing authority shall ensure  through appropriate policies and procedures, that electronic communications, information technology resources and Internet access used by courts under the appointing authority's administrative supervision are used to support activities connected with the business of the court    f    Policies    and    Procedures. Appointing authorities shall communicate the judicial department's electronic communications, Internet access, information technology policies, and user responsibilities, systematically and regularly to all their users    a    Security Procedures  AJIN management shall establish and support reasonable standards and procedures for security of electronic data and information produced, used, or distributed in the judicial department, and to ensure the integrity and accuracy of data the court maintains

    b  Protection Against Unauthorized Use  All users shall protect AJIN's computers, networks, and data from destruction, tampering, and unauthorized inspection and use  Each user shall establish appropriate passwords for the user's account in the first instance, change passwords periodically as may be required by network system administrators, avoid sharing or disclosing passwords to others except to AJIN management in connection with system administration or troubleshooting tasks, and prevent unauthorized or inadvertent access by others to their computers and files

    Monitoring shall be primarily for the purpose of supporting the management responsibilities related to the equitable and efficient use of resources, but could also include monitoring of unlawful activity, conduct that would adversely reflect on the court, or other violation of this section if detected or suspected

    c  Access  AJIN management reserves the right to permit authorized staff to access and disclose the contents of electronic messages, provided that it follows appropriate procedures, in the course of an investigation triggered by indications of user misconduct, as needed to protect health and safety, as needed to prevent interference with the mission of the courts, to protect system security  comply with legal process or fulfill court obligations to third parties, protect the rights or property of the courts, or as needed to locate substantive information required for court business that is not more readily available by some other means

    d  Limitations on Disclosure and Use of Information Obtained by Means of Access or Monitoring    The contents of electronic communications, properly obtained for legitimate business purposes, may be disclosed without permission of the user  The judicial department will attempt to refrain from disclosure of particular messages if disclosure could create personal embarrassment, unless such disclosure is required to serve a specific business purpose, satisfy a legal obligation, or to appropriately respond to requests for records disclosure under state or federal laws governing public access to records    a    Records Retention and Disposition  Users

1  shall retain and dispose of email communications pursuant to an approved retention schedule and
   consistent with Rule 123, Rules of the Supreme Court of Arizona
2

3      b Procedures  AJIN management shall establish or modify, as needed in light of the retention
   schedule, reasonable standards and procedures for maintaining and purging backups of electronic
4  data and information prepared in or transmitted by electronic mail

5
## FACTUAL BACKGROUND
6

7      On or about December 30, 2013, the law firm of Osborn Maledon filed a

8  motion to 'stay' consideration of plaintiff motions for summary judgment and

9  motions to strike in **CV2013-015096**  Irrespective of the merits and lack of legal

10
11 basis for the 'stay', responses, if any, to the motions for summary judgment were

12 due January 9-10, 2014  Osborn Maledon did not provide the electronic docket,

13 *TurboCourt*, the litigants—or the court—a copy of its 'proposed order' related to

14
15 their 'stay' on December 30, 2014, or on the 31st, or on January 1st through January

16 15th, 2014—or at any time thereafter

17     *TurboCourt* electronic filings were viewed on January 5th through Sunday,

18 January 12th, 2014  Defendant filings were noted on January 7th and the 10th.
19
20 **January 8th had no filings**  But, on Sunday the 12th, a 'proposed order' showed up,

21 purportedly **'signed' by Judge Cooper on January 6, 2014**  The filing of January

22
23 12th, 2014, had been retroactively inserted into the official electronic *TurboCourt*

24 docket back-dating the filing to appear as though it were 'filed' on January 8, 2014.

25     The official electronic *TurboCourt* 'filing' of the missing 'proposed order'

26 was **not date or time stamped on the above right-hand corner** of the 'order'

which meant that *the signed order had not been entered into the electronic official TurboCourt record by an authorized user, and that unauthorized access and tampering with the official record* was at issue

On appeal, an Electronic Index of Record, showed only a purported filing, on January 8, 2014, of a 'Proposed Order' at docket #80 of the Index *That filing was not signed by any Judge* That filing had no date and time stamps, had no Index or *TurboCourt* designation as a 'ruling', minute entry—"ME", or "ORDER", **bolded, in the official appellate Index of Record—and was deficient in these official filing respects as against all other official orders, minute entries, and rulings in the Index of Record** (See, IOR docket #93-94, #101-103, #110, #116-119)

On Monday, **January 13, 2014,** a change of judge and judicial transfer were filed together with affidavits related to the electronic evidence tampering, unauthorized access, forgery, back-dating, and breach of the Code of Judicial Conduct These filings were also required, by statute, to be filed with Judge Davis, the Presiding Judge On **January 31, 2014, Cooper 'refers' Goodman to Judge Davis as a 'vexatious litigant'** On March 21, 2014, Davis had purportedly held, and noticed, administrative proceedings which resulted in an administrative order— NO 2014-029

## RECORDS REQUESTS

(1) Federal Funding Summary for 2012-2013-2014, designated for Arizona's Justice System, broken out by State, County, Municipal, and City allocations

## RANDALL H WARNER

(2) On February 10, 2014, electronically filed as a 'ruling' on February 12, 2014, the Hon Randall H Warner asserted he had reviewed official 'evidence' in support of his 'finding' that there was no 'back-dating', 'forgery', or '*ex-parte*' communications by Judge Kay Cooper on or about January 5 through January 12, 2014 in **CV2013-015096  Please provide all records, and electronic or hard-copy documents, of all *evidence* reviewed to support this 'ruling', including, but not limited to  (a) Requests or evidence on electronic filings verification, authorized access, unauthorized access, and computer system usage relating to hard-copy and electronic filing[1] of a '*Proposed Order*' purportedly**

---

[1] Unauthorized access or authorized but unlawful attempts to evade or breach system security, user and use of the AJIN, and compliance with applicable codes-regulations-rules-administrative guidelines, such as compliance with the **Arizona Code of Judicial Administration**, rules regulating *TurboCourt judicial access*, and judicial access to and modification of the appellate Index of Record, and compliance with The Administrative Office of the Courts rules and regulations, are subsumed within each request

filed on January 8, 2014, at Appellate Index of Record Docket Number 80, or the *TurboCourt* Docket CV2013-015096, from December 30, 2013 through January 21, 2014  (b) Provide information requests and evidence reviewed by Warner related to back-dating, by Judge Cooper, of a proposed order 'dated' and 'signed' January 6, 2014—since there is no record of any 'proposed order' in the *TurboCourt* Electronic Docket or the Appellate Docket, filed by Osborn Maledon, at any time predating January 8, 2014  (c) Provide Warner's 'evidence' which controverted written filings and affidavits reflecting Cooper had allowed unauthorized access to the *TurboCourt* Electronic Docket by back-filing a back-dated court order which was first filed on January 12, 2014, a Sunday, to appear as though it was filed on January 8, 2014—*provide electronic screen shots from TurboCourt, cashed, from January* 5, 6, 7, 8, 9, 10, 11, and the 12th, 2014  (d) Provide *any* evidence, electronic or hard-copy documents, used by Warner to determine the authenticity of Cooper's signature purported to be signed on January 6, 2014 and the evidence Warner used to ascertain whether Cooper had access to 'proposed orders' relevant here, based on the electronic docket in *TurboCourt* or the Appellate Docket, at any date preceding January 8, 2014  (e) Provide the entire file comprising

Warner's 'evidence' upon which he relied to make his official filing of record, including file jackets, electronic files and electronic filings, notes, transmissions and communications which formed the basis for the 'evidence'

**To  The Administrative Office of the Courts**—AOC, Clerk of the Superior Court, **Hon  Michael K. Jeanes**, Clerk of the Court of Appeals, **1CA-CV14-0195**, **Ruth H  Willingham, Hon  Katherine  Cooper, CV2013-015096, Raymond L. Billotte**, Judicial Branch Administrator, **Phil Knox**, Deputy Court Administrator, **Peter Kiefer**, Civil Court Administrator

(3) Please provide all prior and concurrent documents relating to, or which may relate to, requests, responses, transmissions, documents, email[2], and 'evidence' of past inquiries, **and current inquiries raised by *this* Records Request**, which are supplemental to, and responsive to Records Request No  2(a)(b)(c)(d)(e) above  Provide the substantive records whether or not requested, obtained, or withheld by Warner or his surrogates in Records Request #2

**Norman J  Davis** Presiding Judge, (ADMINISTRATIVE **ORDER NO  2014-029**)

(4) Provide the entire file related to, or which may relate to, administrative order 2014-029  (a) Provide access to copying the entire file, and any electronic or hard-copy transmissions  (b) Provide the *Notice* for the Administrative Proceedings, filed, and served, and provide documentation and a record of the date, time, location, and parties to be present at the administrative proceeding. (c) Provide the date, time, and location for an 'opportunity' to be heard in writing, or orally, in a judicial proceeding—judicial in character—filed and

---

[2] Please redact, but list, any portions of withheld documents or electronic evidence claimed to be privileged, or claimed as 'protected' over the public's right to know and access to official proceeding documents, or upon which it is claimed that the release of such documents would necessarily bring the court and its officers into such disrepute as to be constitutionally protected as 'work product'  This request does not request access codes or top-secret security protocol—just the results and documentary 'evidence'

served as a matter of the official record  (d) Provide, from the official record, evidence from which *the nature* of the complaints upon which the court relied, can be ascertained, and how the complaints relied upon were substantially identical to issues Goodman prosecuted in 2010, 2012, 2013 and 2014  (e) Provide the official record from which *any* document, filing, sentence, word, or phrase written or uttered by Goodman from 2004 through 2014, were ever found to be 'vexatious', 'harassing', 'oppressive', 'completely without basis and merit' which formed the evidentiary basis for the 'vexatious litigant order' here—(f) Provide a list of all evidentiary hearings, including the present matter, provided Goodman—in state—federal—bankruptcy—or administrative forums and which formed the basis for the administrative order here  (g) Provide a listing of all filings made by Goodman, which involved defendant racketeering conduct, civil rights infringements, constitutional torts, and fraud on or by the court which were proven false and without merit in any forum, in merits litigation, with a record. (h) Provide all communications (*ex parte* and otherwise) with any defendant or judicial officer related to the order  (i) Provide all email involved in the order's procurement  (k) Provide a listing of any contacts, communications, and interaction on this file with any judicial officer, lawyer, lawyer staff, judicial staff, or the agencies discussed herein, including the Administrative Office of the Courts  *Provide a time for file review and copying on or before January 8, 2015*

A reasonable time for response shall be 10 business days, exclusive of holidays and weekends, up to and including January 14, 2014  Please contact the requesting     party     by     email     at     granthgoodman@msn.com     and goodmanconsult@gmail com

Dated this 29th of December, 2014

/s/ Grant H  Goodman

Grant H  Goodman
3104 E  Camelback Road, Suite 563
Phoenix AZ 85016
Phone  (602) 840-2393 (602) 999-9789
granthgoodman@msn.com

## CERTIFICATE OF SERVICE

Copy of the foregoing hand-delivered on the captioned custodians and respondents this 29th of December, 2014

/s/ Grant H Goodman   12 29 2014